[No. F049021. Fifth Dist. Dec. 22, 2006.]

KAREN CONNELLY, Plaintiff and Appellant, v.
COUNTY OF FRESNO et al., Defendants and Respondents.

COUNSEL

Jacobson, Hansen, Najarian & McQuillan, Jube J. Najarian, Leith B. Hansen; and Darrel R. Rustigian for Plaintiff and Appellant.

McCormick, Barstow, Sheppard, Wayte & Carruth, Brian M. Arax, Todd W. Baxter and Shane M. Cahill for Defendants and Respondents.

OPINION

**GOMES, J.**—Plaintiff Karen Connelly (Connelly) appeals from the judgment entered after the trial court granted summary judgment in favor of defendants County of Fresno (County) and Kristina Elizabeth Martinez (Martinez) (collectively, respondents). We will reverse.

## FACTS AND PROCEDURAL HISTORY

*Summary of Facts*

On October 27, 1999, Connelly was involved in an automobile accident when a County vehicle driven by County employee Martinez hit the pickup Connelly was driving. On December 8, 1999, Connelly served a "Claim for Damages," which was a preprinted County form, on the clerk of the County Board of Supervisors. On the form, Connelly identified the date of the injury or damage as October 27, 1999, stated the location of the accident, listed the police report as the source of witnesses' names, and named Martinez as the County employee involved. The claim form asked how the injury or damage occurred; Connelly responded, "County vehicle went through stop sign and hit private owned Chev P-U." The form also asked what action or inaction of the County employee caused her injury or damage; Connelly responded, "The County acted negligent[ly] by letting their driver operate a vehicle" and "[i]mproper driving—failure to obey stop sign—unsafe operation." The form also specifically asked, "What injuries or damages did you suffer?" Connelly responded, "Damage to my '96 Chevy S-10 pickup—Car Rental until my Truck is Replaced. Unspecified Medical, Lost Income, future Medical." Finally, the form asked, "Total Amount Claimed[.]" Connelly responded, "Unspecified." Connelly signed and dated the claim form. At the bottom of the form, below her signature, the form stated, "Attach & include, with this completed form, any bills for medical treatment and expenses and any estimates or bills for personal property damage." No bills for medical treatment or property damage were attached to the claim form Connelly submitted.

In response to the claim, the County mailed Connelly a letter dated December 13, 1999, which stated her potential claim was "insufficient in that it fails to meet with requirements of Government Code Section 910 for the following insufficient information: [¶] No dollar amount and No description of injuries." The letter advised Connelly she "may amend the claim to conform to the Government Code," and failure to do so within 15 days of the notice "will result in its rejection as being insufficient." The letter further advised "[s]uch claim must be received by the County within six months of the incident which gives rise to the claim," and if Connelly had any questions, she should call Tracy Meador.

On December 15, 1999, Connelly's husband, Robert Connelly, spoke with Meador by telephone and asked what they needed to do in response to the County's letter. According to Mr. Connelly, "Ms. Meador said it would be easy to fix the claim form." Meador instructed him to file a written amendment to the claim stating the total amount claimed is " 'within the Superior Court limit.' " Mr. Connelly said Meador told him that to receive any settlement "my wife and I would have to submit specific documentation of the nature and amount of the property damage and car rental, and of my wife's personal injury." Mr. Connelly told her they "could provide documentation on the property damage and car rental, but that we did not yet know the nature of my wife's injuries, or what the resulting medical expenses and loss of income would be." Meador told Mr. Connelly "we could promptly settle the property damage and car rental by submitting the supporting documents at that time, while reserving the personal injury claim until we could submit adequate claim documentation to settle." Mr. Connelly asked if the personal injury documentation had to be submitted within 15 days of the letter's date or six months from the date of the incident. Meador responded it should be submitted within six months of the incident. According to Mr. Connelly, Meador instructed him to write in a letter: "I am Claiming only Property Damage, and Car Rental at this time, however, I request and reserve the right to file a claim for Personal Injury at a later time. Notably within 6 Months of the Incident which gave rise to this Claim." Meador also told Mr. Connelly "we could submit additional information regarding my wife's injuries when[] the doctors told us what was wrong with her."

Following this conversation, Mr. Connelly prepared a letter to the County dated December 15, 1999, which Connelly signed. The letter stated it was in response to the County's December 13, 1999, letter and the telephone contact with Meador on December 15. The letter further stated, in pertinent part: "Please accept this letter as an amendment to the Original you received on Dec. 7, [19]99. [¶] I am also Enclosing copies of car rental bills to date. [¶] I Calculated the Vehicle as a Total using Fresnobee.com///cars.com for local prices and have enclosed Copies. [¶] Reply #1 for TOTAL AMOUNT

CLAIMED="Within The Superior Court limit". [¶] I am Claiming only Property Damage, and Car Rental at this time, however, I request and reserve the right to file a claim for Personal Injury at a later time. Notably within 6 Months of the Incident which gave rise to this Claim. [¶] Is this the Proper information to comply with GC Sec. 910 (insuff. Information)? [¶] Please reply within 5 days. [¶] I would appreciate being notified in advance of any procedure, protocol, or Deadlines that could be Detrimental to the fair conclusion of my claim."

No further amendments or claims were filed with respect to Connelly's claim and she provided no further information. Connelly never spoke with Meador on the telephone. The County paid Connelly's insurance carrier $6,668.77 for the property damage, and a release of all claims for property damage and loss of use was signed on March 7, 2000. Around March 8, 2000, Connelly received a notice of rejection and denial of her claim by the County Board of Supervisors.

According to Connelly, she learned from her doctors in May 2000 that she had serious injuries to her neck that would require surgery. Connelly subsequently had fusion surgery on her neck and later learned she would need back surgery.

### This Lawsuit

On August 23, 2000, Connelly filed a complaint that named the County and Martinez as defendants and alleged one cause of action for negligence arising from the automobile accident. Connelly alleged she had complied with the applicable claims statute. Connelly sought damages for wage loss, hospital and medical expenses, general damages and loss of earning capacity. Connelly did not serve the complaint on the County until September 28, 2001. Respondents filed answers generally denying the complaint's allegations and alleging as an affirmative defense failure to comply with the claims presentation requirements of the Government Tort Claims Act.

Respondents filed a motion for summary judgment, which contended they were entitled to summary judgment because Connelly failed to file a claim for personal injury within the statutory time limits of the Government Tort Claims Act. Connelly opposed the motion, arguing (1) the County was put on notice that she had a personal injury claim against it; (2) there is a triable issue of fact regarding whether Connelly intended to waive or withdraw her personal injury claim; (3) the County admitted in its discovery responses it had no evidence that a claim was not properly filed; and (4) the County is estopped from asserting the personal injury claim was either withdrawn or not made. In their reply brief, respondents asserted that (1) Connelly's claim did not substantially comply with the Government Tort Claims Act, as it

failed to describe her injuries, and therefore was defective on its face; (2) since Connelly never made a valid personal injury claim, Connelly's argument that she never waived that claim is irrelevant; and (3) Connelly's estoppel claim is without merit, as she did not plead estoppel in the complaint and the facts do not support estoppel as a matter of law.

The trial court granted the motion. The court found that although Connelly filed a timely claim asserting property damage and personal injuries as a result of the incident, it was insufficient to support a personal injury claim against the County because it failed to state the nature or extent of Connelly's alleged injuries. The court further found the County's discovery responses did not preclude it from relying on the failure to file a proper claim in support of the summary judgment motion and Connelly's estoppel argument failed because she did not plead estoppel in the complaint and the evidence did not show the County acted unconscionably or frustrated her efforts to comply with the Government Tort Claims Act. After entry of judgment, Connelly filed a timely notice of appeal.

## DISCUSSION

### A. *Standard of Review*

The procedure for making and grounds for granting a motion for summary judgment are set forth in Code of Civil Procedure section 437c. The court must grant the motion if "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493], fn. omitted.) A moving party has the initial burden of producing evidence to make a prima facie showing that no triable issue of material fact exists. (*Ibid.*) Where the defendant is the moving party, this means the defendant must produce evidence showing that the plaintiff cannot establish at least one element of each of its causes of action. (*Id.* at p. 854.) It does not mean that a moving defendant must "conclusively negate" an element of the plaintiff's causes of action. (*Id.* at pp. 853–854.) The burden of production then shifts to the nonmoving party who must produce evidence to make a prima facie showing that a triable issue of material fact exists. (*Id.* at p. 850.) Unlike the burden of production, the burden of persuasion never shifts but remains on the moving party. (*Ibid.*)

On appeal from a summary judgment, "we determine de novo whether an issue of material fact exists and whether the moving party was entitled to

summary judgment as a matter of law. [Citation.] In other words, we must assume the role of the trial court and reassess the merits of the motion. [Citation.] In doing so, we will consider only the facts properly before the trial court at the time it ruled on the motion. [Citation.]" (*Brantley v. Pisaro* (1996) 42 Cal.App.4th 1591, 1601 [50 Cal.Rptr.2d 431]; see also *Chaknova v. Wilbur-Ellis Co.* (1999) 69 Cal.App.4th 962, 967 [81 Cal.Rptr.2d 871].) In this role, we do not decide the merits of the issues, but limit our review to "determining if 'there is evidence requiring the fact-weighing procedures of a trial. [Citation.]' " (*Pensinger v. Bowsmith, Inc.* (1998) 60 Cal.App.4th 709, 717 [70 Cal.Rptr.2d 531] (*Pensinger*), disapproved on other grounds in *Colmenares v. Braemar Country Club, Inc.* (2003) 29 Cal.4th 1019, 1031, fn. 6 [130 Cal.Rptr.2d 662, 63 P.3d 220].) We review directly those papers submitted in connection with the motion. (*Hussey v. Operating Engineers Local Union No. 3* (1995) 35 Cal.App.4th 1213, 1218 [42 Cal.Rptr.2d 389].)

Because of the severity of the consequences of summary judgment, we carefully scrutinize the moving party's papers and resolve all doubts regarding the existence of material, triable issues of fact in favor of the party opposing the motion. (*Pensinger, supra*, 60 Cal.App.4th at p. 717.) " ' "[T]he moving party's affidavits are strictly construed while those of the opposing party are liberally construed." . . . We accept as undisputed facts only those portions of the moving party's evidence that are not contradicted by the opposing party's evidence. . . . In other words, the facts alleged in the evidence of the party opposing summary judgment and the reasonable inferences therefrom must be accepted as true.' [Citation.]" (*Cheyanna M. v. A.C. Nielsen Co.* (1998) 66 Cal.App.4th 855, 861 [78 Cal.Rptr.2d 335].) Like the trial court, we must consider all the evidence properly identified in the papers submitted, "except that to which objections have been made and sustained by the court." (Code Civ. Proc., § 437c, subd. (c); see *Barber v. Marina Sailing, Inc.* (1995) 36 Cal.App.4th 558, 561, fn. 2 [42 Cal.Rptr.2d 697].)

With these principles in mind, we evaluate whether summary judgment was proper.

B. *The Government Tort Claims Act*

██ Under the Government Tort Claims Act (Gov. Code, § 810 et seq.),[1] a plaintiff may not maintain an action for money or damages against a public entity unless first a written claim has been presented to the public entity and

---

[1] All further statutory references are to the Government Code unless otherwise noted.

rejected in whole or in part. (§§ 905, 905.2, 945.4.)[2] Failure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity. (*State of California v. Superior Court* (*Bodde*) (2004) 32 Cal.4th 1234, 1245 [13 Cal.Rptr.3d 534, 90 P.3d 116].) Before a cause of action may be stated, a plaintiff must allege either compliance with this procedure or circumstances excusing compliance. (*Ibid.*)

A claim relating to a personal injury cause of action must be presented within six months after accrual of the cause of action. (§ 911.3.) For the purposes of the claim presentation requirements, the cause of action accrues on the same date a similar action against a nonpublic entity would be deemed to accrue under the pertinent statute of limitations. (§ 901.)

■ Section 910 lists the information that must be included in a notice of claim.[3] As pertinent here, the claim must state the "date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted," provide a "[a] general description of the . . . injury, damage or loss incurred so far as it may be known at the time of presentation of the claim," and state the amount of the claim if it is less than $10,000, or, if the claim exceeds $10,000, the dollar amount cannot be stated but the claim must indicate whether the claim would be a limited civil case. (§ 910.) Section 910.2 requires the claim to be signed by the claimant or some person on his or her behalf.

■ "The purpose of these statutes is 'to provide the public entity sufficient information to enable it to adequately investigate claims and to

---

[2] Section 945.4 provides in full: "Except as provided in Sections 946.4 and 946.6, no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented in accordance with Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910) of Part 3 of this division until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board, in accordance with Chapters 1 and 2 of Part 3 of this division."

[3] Section 910 provides in full: "A claim shall be presented by the claimant or by a person acting on his or her behalf and shall show all the following: [¶] (a) The name and post office address of the claimant. [¶] (b) The post office address to which the person presenting the claim desires notices to be sent. [¶] (c) The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted. [¶] (d) A general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim. [¶] (e) The name or names of the public employee or employees causing the injury, damage, or loss, if known. [¶] (f) The amount claimed if it totals less than ten thousand dollars ($10,000) as of the date of the presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed. If the amount claimed exceeds ten thousand dollars ($10,000), no dollar amount shall be included in the claim. However, it shall indicate whether the claim would be a limited civil case."

settle them, if appropriate, without the expense of litigation.' [Citation.] Consequently, a claim need not contain the detail and specificity required of a pleading, but need only 'fairly describe what [the] entity is alleged to have done.' [Citations.] As the purpose of the claim is to give the government entity notice sufficient for it to investigate and evaluate the claim, not to eliminate meritorious actions [citation], the claims statute 'should not be applied to snare the unwary where its purpose has been satisfied' [citation]." (*Stockett v. Association of Cal. Water Agencies Joint Powers Ins. Authority* (2004) 34 Cal.4th 441, 446 [20 Cal.Rptr.3d 176, 99 P.3d 500] (*Stockett*).)

Where a claimant has attempted to comply with the claim requirements but the claim is deficient in some way, the doctrine of substantial compliance may validate the claim "if it substantially complies with all of the statutory requirements . . . even though it is technically deficient in one or more particulars." (*Santee v. Santa Clara County Office of Education* (1990) 220 Cal.App.3d 702, 713 [269 Cal.Rptr. 605].) "The doctrine is based on the premise that substantial compliance fulfills the purpose of the claims statutes, namely, to give the public entity timely notice of the nature of the claim so that it may investigate and settle those having merit without litigation. [Citations.]" (*Ibid.*) The doctrine of substantial compliance, however, "cannot cure total omission of an essential element from the claim or remedy a plaintiff's failure to comply meaningfully with the statute." (*Loehr v. Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071, 1083 [195 Cal.Rptr. 576] (*Loehr*).) The test for substantial compliance is whether the face of the filed claim discloses sufficient information to enable the public entity to make an adequate investigation of the claim's merits and settle it without the expense of litigation. (*Ibid.*)

If in the public entity's opinion the claim as presented fails to comply substantially with the requirements of sections 910 and 910.2, within 20 days after the claim has been presented the public entity may give the claimant written notice of any defects or omissions in the claim. Once the public entity has done so, it may not take action on the claim for 15 days. (§ 910.8.) This notice gives the claimant an opportunity to cure the defect or supply the missing information by amendment. (*Martinez v. County of Los Angeles* (1978) 78 Cal.App.3d 242, 244–245 [144 Cal.Rptr. 123].) Failure to give such notice results in a waiver of any defense as to the sufficiency of the claim based upon a defect or omission in the claim as presented, with the exception of a lack of the claimant's address. (§ 911; *Martinez, supra,* 78 Cal.App.3d at p. 245.)

As pertinent here, a claim may be amended at any time within six months of accrual of the cause of action for personal injury or before the entity takes final action on the claim, whichever is later, but only if the

amended claim relates to the same transaction or occurrence that gave rise to the original claim. (§ 910.6, subd. (a).) Any amendment is considered part of the original claim for all purposes. (*Ibid.*) Regardless of whether a notice of insufficiency is given, a failure or refusal to amend a claim "shall not constitute a defense to any action brought upon the cause of action for which the claim was presented if the court finds that the claim as presented complied substantially with Sections 910 and 910.2 . . . ." (§ 910.6, subd. (b).)

The public entity must act "within 45 days after the claim has been presented" and give written notice of its action on the claim. (§§ 912.4, subd. (a), 913.) Any notice that a claim is rejected, in whole or in part, or allowed must state the action the entity is taking and give a warning that the claimant has six months from the date of the notice to file a civil action. (§ 913.) If the entity gives proper notice of rejection of the claim, with the requisite warning, a civil action must be brought within six months of the notice. (§ 945.6, subd. (a).)

C. *Compliance with the Government Tort Claims Act*

Respondents' motion was brought on the ground Connelly failed to comply with the Government Tort Claims Act because she did not give the County notice of the personal injuries she allegedly suffered in the accident, which Connelly now seeks to recover damages for in her complaint. Respondents argue the trial court properly granted summary judgment because Connelly's claim was insufficient under section 910, subdivision (d) to support recovery of personal injury damages as it failed to provide a general description of her injuries. Connelly contends she is not precluded from seeking such damages because the statement in her claim that she suffered injuries or damages in the form of "[u]nspecified medical, lost income, future medical" was sufficient, at least under the doctrine of substantial compliance, to put the County on notice that she was asserting a personal injury claim. We agree with Connelly.

The case of *White v. Moreno Valley Unified School Dist.* (1986) 181 Cal.App.3d 1024 [226 Cal.Rptr. 742] (*White*), is instructive. There, a high school student and her parents filed a claim with the school district stemming from an automobile accident, which stated: " 'A general description of the injury, damage or loss incurred so far as it may be known at this time is: Personal injuries to Claimant [student]. Medical expenses incurred by Claimants [the parents].' " (*Id.* at p. 1027.) The claim further stated that the amount claimed was in excess of $500,000 based on "[m]edical specials (present and future), pain and suffering, loss of present and future earnings, and permanent physical injuries, among other things." (*Ibid.*) After the school district rejected the claim, the student and her

mother filed a complaint against it, which sought to recover medical expenses incurred on the student's behalf. The mother's cause of action to recover medical expenses she incurred on the student's behalf subsequently was voluntarily dismissed. At trial, the court excluded all evidence of the amount of medical expenses the student's mother had paid based on its conclusion the tort claim only stated the mother claimed medical expense damages and did not include any claim for medical expenses incurred by the student. The trial court denied the student's motion for a new trial and the student appealed. (*Id.* at pp. 1028–1029.)

The Court of Appeal reversed, concluding the claim was sufficient to cover the student's cause of action to recover medical expenses. (*White, supra,* 181 Cal.App.3d at pp.-1029–1030.) The court explained: "While the claim filed on behalf of [student] was far from a model of clarity, we do not agree with School District that it so utterly failed to indicate [student] was seeking recovery of her medical expenses that she was precluded from suing therefor. The claim indicated that [student] was the injured person, and the amount of the claim 'in excess of $500,000.00,' indicated [student's] personal injuries were serious in nature. Substantial medical expenses would, of course, naturally and certainly result from serious personal injuries." (*Id.* at p. 1031.) The court reasoned the claim was susceptible to the interpretation that both the student and her parents were claiming the right to reimbursement of medical expenses since the amount of damages claimed, $500,000, did not specify any particular amount separately as to any of the parties, which made it appear that the claims were lumped together, especially "in view of the fact that less than two months had passed since the accident and that, no doubt, many of the medical expenses had yet to be incurred or paid." (*Id.* at pp. 1031–1032.)

Based on this interpretation, the court found the student's claim sufficient to reasonably enable the school district to make an adequate investigation and settle the claim, "including the medical expenses which were clearly encompassed within the overall claim." (*White, supra,* 181 Cal.App.3d at p. 1032.) In the alternative, the court found "the combined claim of the minor and her parents in the case at bench, undifferentiated as to the amount claimed by each and making specific reference to past and future medical expenses as part of the overall claim is sufficient to support an action by the injured minor for recovery of her medical expenses." (*Id.* at p. 1033.)

This case shows that in considering whether a claim substantially complies with the Government Tort Claims Act, the claim should be viewed in its entirety and a determination made as to whether the claim is susceptible to an interpretation that reasonably enables the public entity to make an adequate investigation and settle the claim. Here, Connelly's claim revealed that she

was the injured or damaged party, the injury or damage occurred when a County vehicle ran a stop sign and hit her pickup truck, and Connelly claimed her injury or damage was caused by improper driving, failure to obey a stop sign and unsafe operation of the County vehicle. In response to the question, "What injuries or damages did you suffer?," Connelly stated: "Damage to my '96 Chevy S-10 pickup—car rental until my truck is replaced. Unspecified Medical, Lost Income, future Medical." Evaluating this response in the context of this claim, namely one based on an automobile accident, which would be expected to involve both property damage and personal injuries, it is apparent Connelly is stating she suffered both property damage, in the form of damage to her truck and car rental expenses, and damages due to personal injuries suffered in the accident. While Connelly does not specifically state she suffered personal injuries or describe those injuries, the statement, "unspecified medical, lost income, future medical," is certainly susceptible to the interpretation that Connelly was seeking to recover damages for personal injuries in the form of medical expenses and lost income, and that she did not know the extent of those damages.

While Connelly's claim, like the claim in *White*, is not the model of clarity, we do not agree with respondents that it so utterly failed to indicate Connelly suffered personal injuries in the accident and was seeking to recover damages for those injuries as to preclude her from suing for those damages.[4] As in *White*, the claim was filed less than two months after the accident and by its language, purported to set forth only such injuries and damages as were then known. The evidence Connelly presented in opposition to the summary judgment motion showed that although Connelly knew she was injured in the accident, she did not know the extent of her injuries when she filed this claim, and did not know until two months after the County rejected her claim what the injuries in her neck were or that she needed surgery. Since Connelly did not know the extent of her injuries, it is hardly surprising that she described her medical expenses and lost income as "unspecified."[5]

[4] In fact, Meador testified in her deposition that she understood when she received the claim form that Connelly was claiming she had been injured and could not tell the County what her medical expenses or lost income were. While as respondents point out the County's knowledge of the circumstances surrounding the claim, "standing alone," does not constitute substantial compliance (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 455 [115 Cal.Rptr. 797, 525 P.2d 701]), Meador's understanding shows the claim form accomplished its purpose, namely it put the County on notice Connelly was claiming damages for personal injuries.

[5] Although Connelly originally stated the total amount claimed was "Unspecified," respondents acknowledged in their reply papers filed below and continue to acknowledge on appeal that she amended the dollar amount claimed to, "within the Superior Court limit" in her December 15, 1999, letter to the County. Significantly, although the trial court stated in its written ruling that the County was arguing Connelly withdrew her personal injury claim in that letter, respondents specifically conceded below that "it is not, nor has [it] been, [respondents]

█ Respondents assert it can be inferred from this evidence that Connelly at least knew she had some sort of injury to her neck, and her failure to list that on the form rendered her claim deficient. Even if we were to agree her failure to describe whatever symptoms she was suffering from when she filed her claim rendered it technically deficient, we do not agree she failed to satisfy the test of substantial compliance. This is because she stated adequate information on the form to advise the County that she suffered personal injuries in the accident. That was all that was required to substantially comply with the statutes. As the Supreme Court explained in *Stockett*, "In comparing claim and complaint, 'we are mindful that "[s]o long as the policies of the claims statutes are effectuated, [the statutes] should be given a liberal construction to permit full adjudication on the merits." ' [Citations.] If the claim gives adequate information for the public entity to investigate, additional detail and elaboration in the complaint is permitted." (*Stockett, supra,* 34 Cal.4th at p. 449.) Here, having given the County enough information to investigate her personal injury claim by stating she suffered damages in the form of medical expenses and lost income, the policies of the claims statutes were effectuated.

Respondents also contend the inclusion of the word "unspecified" rendered the claim hopelessly vague. We do not agree that it did so for purposes of determining whether there was substantial compliance. As stated above, the test for substantial compliance is whether the face of the claim discloses sufficient information to enable the public entity to make an adequate investigation of the claim's merits and settle it. (*Loehr, supra,* 147 Cal.App.3d at p. 1083.) Here, the information disclosed was that Connelly incurred unknown medical expenses and lost income as a result of the accident, which naturally would have arisen from her personal injuries. This information certainly was sufficient to enable respondents to adequately investigate the extent of Connelly's personal injuries and attempt to settle the claim if it chose to do so.

Respondents complain, however, that the County never was given a realistic opportunity to settle the personal injury claim because Connelly never submitted a detailed description of her injuries or medical bills to support her claim, despite a request to do so. That Connelly did not provide this information, however, does not negate the fact her claim provided sufficient notice she was personally injured and was seeking to recover damages for those injuries. Instead of pursuing the matter further, the County chose to reject the claim. Although pursuant to section 910.6, subdivision (a) Connelly could have amended her claim even after it was rejected to specify the personal injuries she suffered, respondents do not cite any authority that

---

contention in this Motion for Summary Judgment that [Connelly] made a proper personal injury claim, then withdrew it." Respondents do not contend otherwise on appeal.

she was required to do so. To the contrary, a failure to amend a claim is not a defense to an action if the court finds the claim as presented complied substantially with the Tort Claims Act. (§ 910.6, subd. (b).) Having submitted a claim that substantially complied with the Tort Claims Act, Connelly was not required to submit additional documentation or file a second claim in order to comply with the act's notice provisions.

The cases respondents rely on are distinguishable. In *Loehr*, the court held the plaintiff could not maintain an action for damages based on wrongful termination where the letter that purported to be a claim only demanded the plaintiff's reinstatement to his position and nowhere stated there was a claim for money damages or an estimate of the amount of any prospective injury, damage or loss. (*Loehr*, *supra*, 147 Cal.App.3d at pp. 1083–1084.) The court concluded this and other deficiencies were material omissions, which made the letter insufficient as a matter of law to satisfy the requirements of a claim. (*Id.* at p. 1084.) Similarly, in *Wood v. Riverside General Hospital* (1994) 25 Cal.App.4th 1113 [31 Cal.Rptr.2d 8], the court found documents in which the plaintiff's mother complained about the plaintiff's care while hospitalized did not substantially comply with the Tort Claims Act because they were not transmitted to the statutorily designated agent and did not indicate that a monetary claim was being asserted. (*Id.* at pp. 1117–1118.) In contrast to these cases, Connelly's claim specifically mentions her injuries or damages as including unspecified medical, lost income and future medical. This description does not constitute a total failure to comply with the requirement that the claim provide a general description of the injury or damage incurred, as it adequately advises the County that she has incurred personal injuries, which resulted in damages for medical and lost income in an unknown amount.

Having concluded Connelly's claim was sufficient to apprise the County of her personal injury claim, we need not decide Connelly's contention that her claim meets the pleading standard required of a civil complaint. As our Supreme Court has pointed out, "a claim need not contain the detail and specificity required of a pleading, [it] need only 'fairly describe what [the] entity is alleged to have done.' [Citations.]" (*Stockett*, *supra*, 34 Cal.4th at p. 446.) Since a claim need not contain the same specificity as a complaint, it is irrelevant whether the claim here satisfied that standard. We also need not address the issues regarding the effect of the County's discovery responses on the motion or whether the County is estopped from relying on failure to comply with the Tort Claims Act.

In summary, Connelly adequately presented to the County her personal injury claim arising from the accident. Her notice of claim satisfied the purposes of the claims statutes by providing sufficient information for the County to conduct an investigation into her injuries. The trial court, therefore, erred in granting respondents' summary judgment motion.

## DISPOSITION

The judgment is reversed and the matter is remanded for further proceedings consistent with this opinion. Connelly is awarded her costs on appeal.

Vartabedian, Acting P. J., and Wiseman, J., concurred.